FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 30, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

RONALD M.,

                  Plaintiff,

   v.

COMMISSIONER OF SOCIAL
SECURITY,

                  Defendant.

NO: 1:18-CV-03144-FVS

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT are the parties' cross motions for summary judgment. ECF Nos. 8 and 9. This matter was submitted for consideration without oral argument. The Plaintiff is represented by Attorney D. James Tree. The Defendant is represented by Special Assistant United States Attorney Franco L. Becia. The Court has reviewed the administrative record, the parties' completed briefing, and is fully informed. For the reasons discussed below, the Court **GRANTS** Plaintiff's Motion for Summary Judgment, ECF No. 8, and **DENIES** Defendant's Motion for Summary Judgment, ECF No. 9.

## JURISDICTION

Plaintiff Ronald M.[1] protectively filed for disability insurance benefits on October 3, 2014. Tr. 176-84. Plaintiff alleged an onset date of November 13, 2013. *See* Tr. 178. Benefits were denied initially, Tr. 87-93, and upon reconsideration, Tr. 95-99. Plaintiff appeared for a hearing before an administrative law judge ("ALJ") on February 24, 2017. Tr. 35-59. Plaintiff was represented by counsel and testified at the hearing. *Id*. The ALJ denied benefits, Tr. 12-30, and the Appeals Council denied review. Tr. 1. The matter is now before this court pursuant to 42 U.S.C. § 405(g).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 49 years old at the time of the hearing. *See* Tr. 204. He completed 12th grade, and became an EMT in 2002. Tr. 209. Plaintiff lived with his wife and stepson. Tr. 47. Plaintiff has work history as an emergency medical technician, a service mechanic, and a volunteer firefighter. Tr. 42, 52-53. He testified that he could not work because he has to lay down "60% of the day" to

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

relieve compression on his back. Tr. 46-49. Plaintiff testified that he wants to

work and misses his job, but if he forced himself to work all day he would "pay the

price" the next day and be unable to get out of bed. Tr. 44-46, 49.

Plaintiff had back fusion surgery, and then two further surgeries to remove

hardware. Tr. 43. He testified that he takes medications that make him sluggish

and he tries not to drive while taking them "unless he [has] to." Tr. 45. Plaintiff

used to ride horses and a motorcycle, but is unable to do so since his back

surgeries. Tr. 44. He testified that his doctor said he would not perform any more

surgeries, and the back pain might never get better. Tr. 43-44.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

(quotation and citation omitted). Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

citation omitted). In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is

ORDER ~ 6

capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful since November 13, 2013, the alleged onset date. Tr. 17. At step two, the ALJ found Plaintiff has the following severe impairments: status-post lumbar fusion. Tr. 17. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 17. The ALJ then found that Plaintiff has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except that he needs to change positions between sitting and standing every 30 minutes. Pushing/pulling of the lower extremities is limited to occasional. The claimant can occasionally climb stairs, but he cannot climb ladders. He can occasionally perform other postural movements, including crouching, balancing, stooping, and crawling. The claimant should avoid concentrated exposure to extreme cold, vibration, and hazards.

Tr. 17-18. At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. Tr. 23. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: storage facility rental clerk, furniture rental consultant, and cashier II. Tr. 24. On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from November 13, 2013, through the date of the decision. Tr. 25.

ORDER ~ 7

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying

her disability insurance benefits under Title II of the Social Security Act.  ECF No.

8.  Plaintiff raises the following issues for this Court's review:

   1.  Whether the ALJ properly considered Plaintiff's symptom claims;

   2.  Whether the ALJ properly weighed the medical opinion evidence;

   3.  Whether the ALJ erred at step two;

   4.  Whether the ALJ properly considered the lay witness evidence; and

   5.  Whether the ALJ erred at step five.

**DISCUSSION**

**A. Plaintiff's Symptom Claims**

An ALJ engages in a two-step analysis when evaluating a claimant's

testimony regarding subjective pain or symptoms.  "First, the ALJ must determine

whether there is objective medical evidence of an underlying impairment which

could reasonably be expected to produce the pain or other symptoms alleged."

*Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not

required to show that her impairment could reasonably be expected to cause the

severity of the symptom he has alleged; he need only show that it could reasonably

have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591

(9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" for several reasons. Tr. 18.

### 1. Daily Activities

The ALJ noted that

despite [Plaintiff] testifying that he is severely limited in his activities, his physical therapist noted in March 2016 that he continues to perform many chores at home, including fixing a broken pipe and then digging and filling a large hole after repairing the pipe. While the latter activity apparently exacerbated his back, one would expect that someone, who is alleging chronic, unabated pain, which is relieved only by lying down, would have no ability to engage in such activities.

Tr. 21. Evidence about daily activities is properly considered in making a credibility determination. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "Even where [Plaintiff's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

Here, the ALJ found the severity of Plaintiff's symptom claims were inconsistent with a physical therapy treatment note recounting Plaintiff's self-report that he has continued to do chores at home, and on one occasion he fixed a broken pipe and then refilled the hole after repairing the pipe. Tr. 21 (citing Tr. 458). However, as noted by Plaintiff, the one-time activity of repairing the broken pipe, "resulted in a significant flare in his pain that worsened his functioning even over the course of a few days"; and, while not acknowledged by the ALJ, Plaintiff's physical therapist specifically noted that Plaintiff's continued attempts to do home chores was "BEYOND HIS PHYSICAL CAPABIILTIES." Tr. 458 (emphasis in original). Plaintiff need not be utterly incapacitated in order to be eligible for benefits. ECF No. 8 at 17 (citing *Fair*, 885 F.2d at 603); *see also Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) ("the mere fact that a plaintiff has carried on certain activities . . . does not in any way detract from her credibility as to her overall disability.").

Moreover, in making a credibility finding, the ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what

evidence undermines the testimony." *Holohan*, 246 F.3d at 1208. Here, as noted by Plaintiff, it is unclear how this treatment note indicating that Plaintiff attempted to do chores and fix a broken pipe on one occasion, which was further identified as "beyond his physical capabilities," is inconsistent with Plaintiff's testimony that if he attempted to work he "could probably make [himself] do it all day. But then [he] would pay the price for it at the end of the day." ECF No. 8 at 18 (citing Tr. 49) (also noting that he "couldn't even get out of bed" the next day if he "forced" himself to work all day).

For all of these reasons, the ALJ's finding regarding Plaintiff's "activities" is not supported by substantial evidence, and is not a clear and convincing reason to discount Plaintiff's symptom claims.

### 2. Inconsistencies

The ALJ noted that Plaintiff testified that his "medications caused him to feel sluggish. A review of the medical records, however, do not document any persistent reports of side effects." Tr. 21. The ALJ additionally cited evidence that Plaintiff "denied any impairment in his ability to drive from his medications." Tr. 21. Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995). Moreover, in evaluating symptom claims, the ALJ may consider inconsistencies in Plaintiff's testimony or between his testimony and his conduct.

*Thomas,* 278 F.3d at 958–59; *see also Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir.1996) (ALJ may consider prior inconsistent statements).

Plaintiff argues that this finding "misstates the record." ECF No. 8 at 18. The Court agrees. As noted by Plaintiff, the record includes ongoing evidence of side effects from medication, including: November 2014 reports that amitriptyline made him "feel like a zombie," gave him bad dreams, and caused "daytime fatigue and grogginess"; June 2016 reports that zonsaiamide caused him to be forgetful, and the side effects of neuropathic medications "limited their usability"; August 2016 reports that he could not take hydrocodone if he was going to drive; and November 2016 reports that side effects from medication made him feel "unusual" and he could not drive. ECF No. 8 at 18-19 (citing Tr. 311, 494, 503, 506). The Court also notes that Plaintiff reported in February 2016 that medications have made him "feel weird," and he was not driving at that time. Tr. 513.

Based on the foregoing, the ALJ's finding that Plaintiff's testimony regarding side effects from medication was inconsistent with medical records was not a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's symptom claims.

### 3. *Lack of Objective Medical Evidence*

Finally, and in large part, the ALJ found Plaintiff's allegations of disabling pain are out of proportion with "postoperative workup findings" and "relatively benign physical examination findings." Tr. 18-21. The medical evidence is a

relevant factor in determining the severity of a claimant's pain and its disabling

effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).

Here, the ALJ set out, in detail, the medical evidence purporting to

contradict Plaintiff's claims of disabling limitations. For example, a November

2014 MRI showed moderate degeneration and mild disc bulging; May 2015 x-rays

indicated "evidence of healed L3-5 fusion," and his treating provider opined that

his MRI was "without any significant findings" and "the source of his back pain is

not entirely clear"; in November 2015 his provider recommended non-operative

treatment based on MRI showing no significant central canal stenosis or neural

foraminal narrowing; and an October 2016 MRI showed "moderate neural

foraminal narrowing" and multi-level edema, "but otherwise mild changes." Tr.

18-19 (citing Tr. 365, 432, 446, 480, 539). The ALJ also cited physical exams

that observed Plaintiff had normal gait and station, negative straight leg raising on

some occasions, 5/5 motor strength, normal motor function, and normal range of

motion and sensation; and the ALJ specifically found that while Plaintiff "has

continued to have tenderness and reduced range of motion" since his April 2014

fusion, the examination findings "fail to substantiate his description of disabling

low back and leg pain and being bedridden for the majority of the day." Tr. 19-21

(citing Tr. 351, 379, 432, 435, 441, 501, 507, 526, 559, 584). Finally, the ALJ

relied on a February 2017 reviewing opinion that described Plaintiff's testing as

"overall unremarkable" and concluded that Plaintiff "was not a surgical candidate,

and, instead, recommended conservative treatment, including core strengthening exercises, massage therapy, and yoga." Tr. 19, 584.

Plaintiff argues the ALJ erred in finding Plaintiff's complaints were out of proportion to the objective evidence. ECF No. 8 at 19. As noted by Plaintiff, the "conservative treatment" recommended in February 2017 was "only recommended after [Plaintiff] had already undergone three separate spinal surgeries," and this recommendation was consistent with the opinion of Plaintiff's treating surgeon that he undergo conservative treatment because he did not respond to surgical treatment, and now had "failed back surgical syndrome." ECF No. 10 at 7 (citing Tr. 305, 348, 448, 514). However, regardless of whether the ALJ erred in finding Plaintiff's symptom claims were not corroborated by objective testing and physical examinations, it is well-settled in the Ninth Circuit that an ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). As discussed in detail above, the two additional reasons given by the ALJ for discounting Plaintiff's symptom claims were legally insufficient. Thus, because lack of corroboration by objective evidence cannot stand alone as a basis for a rejecting Plaintiff's symptom claims, the ALJ's finding is inadequate. On remand, the ALJ must reconsider Plaintiff's symptom claims.

**B. Medical Opinions**

ORDER ~ 14

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir.2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (quotation and citation omitted).

Plaintiff argues the ALJ erroneously considered the opinions of treating physician Daniel Kwon, M.D. and state agency reviewing physician Leslie Arnold,

M.D..[2]  ECF No. 8 at 6-15.  In January 2015, as noted by the ALJ, state agency

reviewing physician Dr. Leslie Arnold opined that Plaintiff was limited to

sedentary work, with additional postural and environmental restrictions.  Tr. 22,

65-67.  In February 2016, treating physician Dr. Daniel Kwon noted that Plaintiff

has had "progressive pain" for "over 20 years closer to 30 years"; has gone through

"numerous conservative treatments and ultimately surgical intervention but his

pain continues to be debilitating"; and "has not been functional and has been

disabled for the last several years and even the last surgery with the hardware

removal only help[ed] mildly and he still has severe pain."  Tr. 22, 514.  The ALJ

granted these opinions little weight.  Tr. 22.  The ALJ considered Dr. Arnold and

Dr. Kwon's opinions jointly; thus, the Court will do the same.[3]

---

[2] Plaintiff additionally argues that the ALJ "harmfully erred in giving Dr. [Greg]

Saue's April 2015 opinion 'significant weight' over [Plaintiff's] treating physician,

Dr. Kwon."  ECF No. 8 at 14-15.  In light of the need to reconsider Dr. Arnold and

Dr. Kwon's opinions, as discussed herein, the ALJ should reconsider all of the

medical evidence on remand, including opinion evidence deemed relevant.

[3] Plaintiff argues that "[b]y grouping them together in this way, the ALJ

demonstrably failed to consider Dr. Kwon's status as a treating physician."  ECF

No. 8 at 8.  As discussed herein, the medical opinion evidence must be reevaluated

on remand, including all relevant "factors in deciding the weight [given] to any

medical opinion," such as: treating or examining relationship, length of treatment

First, the ALJ noted that these assessments are "inconsistent with [Plaintiff's] activities." Tr. 22. An ALJ may discount an opinion that is inconsistent with a claimant's reported functioning. *See Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). In support of this finding, as above, the ALJ relied on a single March 2016 physical therapy treatment note, dated one month after Dr. Kwon's assessment, noting that Plaintiff "continues to perform many chores at home, including fixing a broken pipe and then digging and filling a large hole after repairing the pipe." Tr. 22, 458. However, as noted by Plaintiff, the same treatment note indicates that the home chores referenced by the ALJ were further determined to be "BEYOND HIS PHYSICAL CAPABILITIES"; and a few days after Plaintiff reported working on a broken pipe, he was in 8/10 pain, had immediate pain when he tried to rise, and transitioned with grimaces and difficulty. ECF No. 8 at 11 (citing Tr. 457). The Court finds this single treatment note outlining Plaintiff's attempts at activities that were simultaneously determined to be beyond his capabilities, does not rise to the level of substantial evidence to support the rejection of these opinions because they were inconsistent with Plaintiff's "daily" activities. This was not a specific and legitimate reason to reject Dr. Arnold and Dr. Kwon's opinions.

relationship and frequency of examination, nature and extent of treatment relationship, supportability, consistency, specialization, and other factors. *See* 20 C.F.R. § 404.1527(c).

Next, the ALJ found that Dr. Arnold and Dr. Kwon's opinions were "out of proportion to . . . relatively unremarkable diagnostic findings in the spine and legs"; inconsistent with "relatively benign examination findings"; and inconsistent with the opinion of Dr. Oskouian, a neurologist and spine specialist, who reviewed the medical evidence and determined Plaintiff should engage in conservative therapy rather than further surgical intervention.  Tr. 22.  The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating that medical opinion.  *Orn*, 495 F.3d at 631; *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (an ALJ may discount an opinion that is conclusory, brief, and unsupported by the record as a whole, or by objective medical findings).  The ALJ supported this finding by noting, without specific citation to the record, that (1) "imaging studies have generally demonstrated only mild degenerative changes in the lumbar spine, with no significant stenosis or nerve root involvement"; (2) a December 2016 nerve conduction of the bilateral legs was negative for motor and sensory dysfunction; (3) despite "tenderness and reduced range of motion in his spine, [Plaintiff's] examinations have otherwise been generally normal, including a normal gait, normal heel and toe walking, negative straight leg raising, and full range of motion, motor strength, sensation, and deep tendon reflexes throughout the bilateral legs, without significant signs of atrophy"; and (4) Dr. Oskouian concluded that Plaintiff's diagnostic imagining was "overall unremarkable" and he should undergo conservative therapy as opposed to further surgical intervention."  Tr. 22.

ORDER ~ 18

Plaintiff argues the ALJ erred in finding Dr. Kwon's opinion "out of proportion" with testing and examination findings because Dr. Kwon himself made many of the examination findings cited by the ALJ, and reviewed Plaintiff's most recent MRI; and "[a]s treating physician, he was in the best position to make such an analysis." ECF No. 8 at 8-9; *see* Tr. 501, 507, 510, 513-14, 517. In addition, as discussed above, regardless of any "benign" or "unremarkable" test results or examination findings, the record also includes evidence of reduced range of motion, antalgic gait, positive straight leg tests, and reduced range of motion in the spine and hip; and it was determined that Plaintiff should undergo three spinal surgeries in the span of fourteen months. ECF No. 8 at 9 (citing Tr. 288, 312, 348, 368, 441, 444, 448, 457, 463, 466, 469, 472, 510, 513, 558, 577). Finally, Plaintiff contends that Dr. Oskouian's opinion cannot be "inconsistent" with Dr. Kwon's and Dr. Arnold's because it does not offer a functional assessment or opine as to Plaintiff's ability to sustain full time work; and both Dr. Kwon and Dr. Oskouian recommended that Plaintiff avoid further surgical intervention. ECF No. 8 at 12 (citing Tr. 514, 584).

Defendant argues the ALJ "logically concluded" that the severity of Dr. Kwon and Dr. Arnold's opinions were "out of proportion" to "overall" unremarkable diagnostic and examination findings, and inconsistent with the opinion of Dr. Oskouian. ECF No. 9 at 9-11; *see Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld). However, in light of the need to reconsider

ORDER ~ 19

Plaintiff's symptom claims, as discussed in detail above, the ALJ should also reconsider the medical opinion evidence on remand.

**B. Additional Assignments of Error**

Plaintiff also challenges the ALJ's assessment at step two; the ALJ's consideration of lay witness statements; and the ALJ's conclusion at step five. ECF No. 8 at 4-6, 15-17, 19-20. Because the analysis of these questions is dependent on the ALJ's evaluation of Plaintiff's symptom claims and the medical opinion evidence, which the ALJ is instructed to reconsider on remand, the Court declines to address these challenges here. On remand, the ALJ is instructed to reweigh the medical opinion evidence of record, reconsider Plaintiff's symptom claims, and conduct a new sequential analysis.

**REMEDY**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome[.]" *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison v. Colvin*, 759 F.3d 995, 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability

claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

Although Plaintiff requests a remand with a direction to award benefits, ECF No. 8 at 20, the Court finds that further administrative proceedings are appropriate. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose). Here, the ALJ's error in considering Plaintiff's symptom claims and the medical opinion evidence calls into question whether the ALJ's findings at the subsequent steps in the sequential evaluation were supported by substantial evidence. "Where," as here, "there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler*, 775 F.3d at 1101. Instead, the Court remands this case for further proceedings. On remand, the ALJ must reconsider the medical opinion evidence, and provide legally sufficient reasons for evaluating these opinions, supported by substantial evidence. If necessary, the ALJ should order additional consultative examinations and, if appropriate, take additional testimony from medical experts. The ALJ must reconsider Plaintiff's symptom claims, the step two findings, and lay witness testimony. Finally, the

ALJ should reassess the RFC, and reconsider the remaining steps in the sequential analysis, if necessary.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion for Summary Judgment, ECF No. 8, is **GRANTED**.

2.  Defendant's Motion for Summary Judgment, ECF No. 9, is **DENIED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel, enter judgment in favor of the Plaintiff, and **CLOSE** the file.

**DATED** September 30, 2019.

_s/Fred Van Sickle_
Fred Van Sickle
Senior United States District Judge